May it please the court. My name is Evan Murray. I represent the petitioner in this matter. Initially in preparing my remarks, my argument, I was going to comment that this is a fairly straightforward case. But as I continued to review the record and review the facts of the case, it became more and more apparent to me that this really was a very one-sided case and actually quite an egregious case. The immigration judge in this matter, for one thing, he somewhat took it upon himself to become almost a prosecutor in several minutes, probably more than 15 minutes of questioning the petitioner on one specific matter in regard to something that she had both stated specifically in her written statement, also put very clearly in the 589 application that she admitted, and then stated very specifically on the record that she had worked for a water company for some 26 years from 1977. The omission from the application that he focused on was the employment aspect, the clarion? Yes, Your Honor. Yes, that's specifically what we're referring to. It was not listed as one of her employers, right? It was listed as her employer in the 589, as I indicated to you. Where is that? If I may. I'm looking at AR 185, and that's part A, Roman 3, and number 4 asks for information about your employment during the last 5 years. List your present employment first, and the only thing I can see is running water company. That's what we're specifically talking about. Where's Voice of Asia? Voice of Asia was the temporary employer that she took employment with after she was fired by the water company. Right, that's the whole point. She had employment with a company. It didn't say list only your permanent employment or your most significant employment. It asked for your employment during the last 5 years. She didn't put Voice of Asia, and Voice of Asia was the company that had relationships with clarion that brings her on a business visa to the United States. It's a fairly significant omission. And I concede that fact, Your Honor. Can I also ask you, because you said something that was, she testified to it. I noticed at ER or AR, whatever it is, 193 in her statement, there's no reference to that employment. And what was curious was on that page, she in part says, the best way for me was to leave the country before the police could harm me again 6 months later. My second brother continued to use his relationship and got me a passport, then invitation letter, and then there are a bunch of ellipses there. What do the ellipses refer to? I don't know what they do refer to. However, I will comment that she very specifically in her sworn testimony before the court explained very specifically and at great length both about her employment with the water company and also about her employment with the Asia audio company with which she obtained a passport to come to the United States. So she, while that was technically an omission out of the documentation, she explained very thoroughly in her testimony about her employment with the car company, the audio company. Is there anything in the record that suggests that she wasn't really employed by Voice of Asia, that this was a subterfuge, that this was merely a ruse arranged by her second brother in order to get her into the United States and that she wasn't really working for Voice of Asia? No, nothing. So she really was working for Voice of Asia, so this really was an omission from her 589? Yes, it was. Okay. Is there any sense that, what do we know about that? She was only with Clarion for a month. What was she doing with Clarion? Well, Clarion was the company here in the United States which she came to. There was some kind of business that she was doing. I know the deal in audio for cars. Yes, yes. The audio company, the Asia audio company sent her to the United States to do some cooperative, I don't know exactly what the procedure was, but she testified that she came several days and worked at that company on a regular basis for a short period of time. Is there anything in the record that indicates whether she came to the United States with the intention of applying for asylum? Whether she knew when she came here to spend this month with Clarion that she would not be returning to China? No, not that I'm aware of. However, there's certainly nothing in the case law that either requires that or suggests that's in any way inappropriate. I.J. was quite curious as to why she waited for another five months or so before she applied for asylum after she finished her one-month contract with Clarion. She waits until March. She finishes in October. Yes, that's correct, Your Honor. Then she just seems to stay here for five months in Monterey Park not doing anything that we can tell. Was Voice of Asia curious as to whether she was returning to China or did she have any obligations to Voice of Asia at that point? There's nothing in the record that indicates either one way or the other. However, there's specific case law that's cited to the court in the petitioner's brief that suggests that whether there's an omission there or whether we just simply don't know the answer to that question, that isn't to give us any kind of implication that she either didn't, wasn't persecuted in China or that she had, you know, any intention of misleading the court once she did file for her asylum. I want to reserve some specific time. Why don't you go ahead. May I make one more observation before I reserve my time, though? I would like to indicate to the court that the immigration judge's decision was based purely on speculation. He speculated that there was some inappropriate purpose for her waiting for that short period of time before she applied for asylum. He speculated that just because she hadn't mentioned the Asia Car Company, that there was no merit to the 26 years that she worked for the water company, and that was purely speculation on his part. All of her testimony was very consistent. The judge, the immigration judge, didn't mention any inconsistency. He didn't mention any omissions. He didn't mention any non-responsiveness. He just simply made this speculation and issued his decision based upon that speculation. I'll reserve the remainder of my time. Okay, thank you. May it please the Court. Anthony Norwood for the respondents. Your Honors, the evidence in this record does not compel the conclusion that Petitioner was telling the truth. The immigration judge properly based his incredibility finding on misstatements and discrepancies in her claim. Petitioner misstated fundamental issues that go to the heart of her claim. She lied about what she was doing in China, and she lied about how and why she came to the United States. That is the heart of her claim. She did not include on her asylum application her employment with the auto company. She claimed that she only worked for the water company, and that she came to the United States to flee persecution. When you said she lied about what she was doing in China, you mean she didn't talk about this part-time job? Yes. I mean, she didn't include that on her application, as the Court has already pointed out. Well, the employment was in the United States, essentially. I guess that's where she performed the work. What besides the, we understand the omission of the Clarion one-month deal. What else did the record show that she lied about? The omission is what I'm talking about. And so from that, one can reasonably infer she lied about her having worked for the water company? No. I didn't mean to say that. She had another job in China after the water company. That's her testimony. And she didn't include that. So you don't. So she omitted that. Government doesn't dispute that she actually was employed by the water company. I don't think the immigration judge or the government disputes that she may have worked for the water company. We don't know exactly how long she worked for the water company and when she was hired by the auto company. Why does the omission go to the heart of her claim? I believe it goes to what she was doing in China and how and why she came to the United States. Her testimony is that her second brother, who appears to be her cousin that lived with the family, arranged for her to work with Voice of Asia, got her the invitation letter, and arranged for her to get a passport so that she didn't really have to deal with, apparently you have to have a police certificate in order to obtain a passport, so she didn't have to deal with the police. If that were true, then how does that undermine her claims? I believe it's to question if that were true. The immigration judge concluded that it was not true, that she actually properly got a passport in China. She actually properly got a visa. And she went to the police. Let's suppose that she had listed Voice of Asia as an employer on her 589. Would this case be in a different posture? It would be whether the immigration judge. She put down, I worked for Voice of Asia for two months as a temporary employer on her 589. What would the government's case against her be? It would depend on whether the immigration judge believed her credibility. It would still be a credibility question if the petitioner points to the Guo decision where a person did claim that he got a B-1 visa by subterfuge and came to the United States, but then he didn't work. What I think tripped up the immigration judge was she didn't include this job, but she was actually hired and she actually legitimately got a passport and got a visa and came to the United States and did the job. There doesn't appear to be any subterfuge. She admitted that she went to the police. It just simply doesn't seem to be that kind of subterfuge fleeing persecution case. The immigration judge based his credibility decision on these two omissions. She did go to the police to get the passport? She did go to the police. I think on AR-81 and 80 and 81, she admits that she went to the police. Yeah, it's a little confusing, the line there on 14. Her answer is, yes, so you got your passport in a normal way. Yes, alternative through the normal procedure. I have no clue what that means. But my understanding was that her second brother helped her go around the police so that she didn't have to go to the station herself. I don't think the immigration judge believed that. I think the immigration judge believed, and the evidence shows, that she got the passport in the normal procedure. She had an invitation, went to the U.S. consulate, had a job, came here and worked at the job. That was the immigration judge. Maybe I'll ask your counsel for petitioner. I wasn't clear as to whether she was meeting with the police or not. Because it says you have to have it approved from the police department first. What do you mean? In order to get a passport, one has to present your personal ID, proof from the police. So is that what you did? Yes. So I can't tell from that whether there's something else to indicate. Mostly, as I recall, and I have from the notes, it's from 78 to 81 where the immigration judge questioned whether she used subterfuge to get her passport. And he didn't believe her. He thought that she got a passport and a visa in the legitimate, straightforward way. She properly got a B-1 visa. She went to the U.S. consulate. She had a job. She came to the United States. She performed that job. She says she didn't know where the office was, but she performed that job. She lived up to her contract, and then she overstayed her visa. Well, but as Judge Bybee's pointing out, I now see on 79, my second brother, he works as a security officer, so he made the connection with the police. So assume that the thrust of her testimony was that, yes, she got a visa, and, yes, she got a passport, but she made an end run around having to deal with the police who had her under surveillance because of her complaint about corruption. And so she then comes to the United States. If she had put that down, in other words, if she had just revealed the part-time job on the forum, again, what would then be the hole in her story? Well, Your Honor, I'm not sure if you take all the psychotheticals, there would be a hole in her story. Well, because the IG is assuming, he's jumping from the fact that she didn't put it down, that therefore she's lying. So it rests on that one omission. And so the question is, why does that omission call into question all of the testimony if it's simply an omission of a one-month job? It's a fundamental omission of what she was doing in China. We don't know when she got hired by this declaring company, but when she was last in China, she was employed by this company, trusted well enough to be sent to the United States. She got an invitation letter. She went through the proper channels and got a passport and visa. She came to the United States and worked at the job. That's what the immigration judge saw for the period of the contract. Was she here on a special visa? A B-1 visa, a proper business visa. And what's the term on the visa? Is it six months? I think it was three months. I'm not sure. Well, if it was three months, then she overstayed her visa. She did ultimately overstay her visa. Oh, she did overstay the visa. Yes. Then she applied for asylum. The evidence does not compel the conclusion that the petition was credible. Thank you, John. All right. Thank you. I appreciate the government's counsel's admission that there was no question about the validity of her testimony as to the period of time that she worked for the water company. But if you... Counsel, can you understand that if the claim is that she was living in fear of the police because of what she did at the water company, as she claimed, then the IJ expressed incredulity that if that were the case, how could she then be able to get this job that not only required going through the police and the government officials, but she was allowed to exit the country. And she doesn't bother to put that into her application to reveal that she had that, not just getting a job, but she was able to leave the country. It seems to me that's the thrust of why the IJ felt it was important and went to the heart of the claim. I understand, Your Honor. But she was very specific in her testimony that it was her, this relative. Her brother. Second brother. Yes, exactly. She referred to it as her second brother. It was this relative, because he had security connections, and the implication is he had some connection with the police, who was able to do an end run, obtain the passport, also had the connections to obtain this job for her, which the job was simply a subterfuge to get a visa to come to the United States. I suspect that's the main reason it wasn't disclosed. No, that's a little different than what you told me in your opening statement. I asked you if this was a subterfuge, and you told me it was not. She actually had a job. She did actually have a job, but what I'm saying is the point of that job was to come to the United States. I'm not saying that she did not have a job. If all of that is true, it seems to me it would have strengthened her argument immeasurably to have said that on her statement and to have answered the questions correctly. She did answer questions correctly. She did. But I do agree with you that it was an omission, that it was not on the documentation clearly. It's a material omission, and that means that she hasn't answered the questions correctly. Okay, I won't. But, however, the other judges' notations are very correct. If you read the testimony in its entirety, the oral decision of the judge, and more specifically the written decision of the judge, basically the whole basis of the judge's decision is he totally discounts all of her testimony in regard to working at the water company, and the basis of his decision is he says he doesn't believe that she worked at the water company. Okay. Which... You're over time. We got it. Thank you. Thank you very much. Thank you, counsel. We appreciate the argument, and the case is submitted.
judges: Strom, Fisher, Bybee